IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| RACQUEL JONES | | |
|   *on behalf of her minor* | : | |
| *children a/k/a S.K.1, S.K.2,* | | |
| *B.K. and D.K., as custodial* | : | |
| *parent and legal guardian* | | |
| | : | Civil Action No. DKC 14-3245 |
|   v. | | |
| | : | |
| PRINCE GEORGE'S COUNTY | | |
|   PUBLIC SCHOOLS, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case are the following motions: a motion for summary judgment filed by Defendant Imagine Schools Nonprofit, Inc. ("Imagine Schools")[1] (ECF No. 33); a motion for summary judgment filed by Defendants the Board of Education of Prince George's County (the "School Board") and Danielle Ellis (neé Goddard) (ECF No. 34); and three motions to seal (ECF Nos. 32; 48; 68). The relevant issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions for summary judgment will be granted. The motions to seal will be denied without prejudice.

---

[1] Imagine Schools, Inc. is also named as a defendant in the caption. Imagine Schools, Inc. was merged into Imagine Schools Nonprofit, Inc. in August 2015. (ECF No. 33-2 ¶ 4).

I.   **Background**

   A.   **Factual Background**

   Unless   otherwise   noted,   the   facts   outlined   here   are
undisputed   and   construed   in   the   light   most   favorable   to
Plaintiff Racquel Jones ("Plaintiff"), who brings this action on
behalf of her minor children.   Plaintiff, who has been without a
permanent   address   for   nearly   two   years,   enrolled   her   four
children   at   Imagine   Lincoln   Public   Charter   School   ("Imagine
Lincoln")   in   Temple   Hills,   Maryland,   a   charter   school   operated
by Defendant Imagine Schools.   (ECF No. 33-2 ¶¶ 3-6).   Imagine
Lincoln   had   a   uniform   policy   for   its   students,   which,   as   of   the
2012-2013   school   year,   requires   that   girls   in   sixth   through
eighth grade and all boys wear the following:

> White   short   or   long   sleeve   oxford   [shirt]
> with   [school]   logo   to   be   worn   with   Khaki
> pants,   shorts   or   red/white/blue   necktie   and
> red   cardigan,   pullover   or   vest   with   school
> logo.   Dress/casual   shoes   must   also   be   worn
> at   all   times   (no   athletic   shoes   worn   unless
> at   physical   education).

(ECF No. 33-11, at 3).   The uniform policy mandates that girls
in kindergarten through fifth grade wear:

> White   short   or   long   sleeve   oxford   [shirt]
> with   [school]   logo   to   be   worn   with   Khaki
> pants,   shorts   (no   skirts   or   skorts),   white
> short   or   long   peter   pan   blouse   worn   only
> with      red/white/blue      plaid      jumper,
> red/white/blue   cross   bow   tie   and   navy
> tights.   Dress/casual   shoes   must   also   be
> worn   at   all   times   (no   athletic   shoes   unless
> at   physical   education).

(*Id.*).   Pursuant  to  the  uniform  policy,  "[a]ny  student  who  is partially  out  of  uniform  will  receive  a  uniform  demerit.    Any student  that  is  missing  a  major  component  of  the  school  uniform will  not  be  admitted  and/or  allowed  to  remain  in  school." (*Id.*).   If  a  student  receives  a  uniform  demerit,  he  or  she  "will face  consequences  for  that  particular  day  the  demerit  was issued."  (*Id.*).

Imagine  Lincoln  changed  its  uniform  policy  prior  to  the 2012-2013  school  year,  requiring  students  to  wear  some  different components  than  were  previously  required.   (ECF  No.  33-1  ¶¶  42-43).   Imagine  Lincoln  informed  parents  about  the  uniform  policy change  on  July  16,  2012.   (ECF  No.  33-12).   Plaintiff  received notice  of  the  uniform  change  because  she  used  her  sister's  home address  to  receive  school  mailings.   (*See*  ECF  No.  36,  at  17-18). Prior  to  the  start  of  the  2012-2013  school  year,  Plaintiff purchased  the  required  khaki  pants  for  her  children.   She  also purchased  white  shirts,  but  she  was  unable  to  afford  the required  white  shirts  with  the  school  logo.   (*Id.*  at  22).   The children's  father  purchased  shoes  for  the  children.   (*Id.*  at 24).   Ms.  Ellis,  Imagine  Lincoln's  principal,  offered  Plaintiff at  least  $100.00  in  vouchers  to  help  defray  the  cost  of purchasing  the  children's  uniforms.   (ECF  Nos.  35,  at  15-17;  36,

at 30).[2]   Plaintiff avers that Ms. Ellis told her that if she could not afford the uniforms she should consider placing her children in a different school. (ECF No. 60-1, at 9-10).

During the 2012-2013 and the 2013-2014 school years, Plaintiff's children received several uniform demerits for arriving at school without a complete uniform. (ECF Nos. 33-1 ¶¶ 68-79; 59, at 4). Plaintiff contends that, in punishment for the repeated uniform violations, the children were placed in a kindergarten or first grade classroom for one week each school year despite the fact that the children were all in higher grades at the time. (*See* ECF Nos. 37, at 13; 38, at 6; 59, at 4). While in the lower-grade classrooms, the children were unable to complete regular school work. (ECF No. 2 ¶ 31). Plaintiff asserts that her children were "ridiculed, bullied, and harassed by their classmates for not having on school uniforms and for being placed in lower grade classrooms." (*Id.* ¶ 30). According to an affidavit of Janna Parker, a former teacher at Imagine Lincoln, Ms. Ellis "frequently called Plaintiff derogatory names and informed other Imagine Lincoln staff members that she wanted her children out of the school." (ECF No. 67-1 ¶ 10).

---

[2] The parties dispute the exact amount offered Plaintiff, and it is not clear if Plaintiff accepted all, a portion, or none of the money offered. This dispute, however, is immaterial and does not undermine Defendants' entitlement to summary judgment.

**B.    Procedural History**

Plaintiff commenced this action by filing a complaint in the Circuit Court for Prince George's County on September 10, 2014.  (ECF No. 2).  Defendants Imagine Schools, the School Board, and Ms. Ellis (collectively, the "Defendants") removed the action to this court.  (ECF No. 1).  The complaint asserts the following counts: a violation of Plaintiff and her children's substantive due process rights under the Fourteenth Amendment brought under 42 U.S.C. § 1983 against all defendants (Count I); a violation of the Equal Protection Clause brought under § 1983 against all defendants (Count II); and a state-law claim of intentional infliction of emotional distress against Ms. Ellis (Count III).  Defendants answered the complaint (ECF No. 9), and the parties participated in discovery.

On February 11, 2015, the parties filed a joint motion for a protective order regarding confidentiality of discovery material in order to prevent the release of personally identifiable information of Plaintiff's minor children and School Board employees.  (ECF No. 12).  The following day, the court issued a paperless order granting the parties' motion for a protective order.  (ECF No. 13).

On October 5, Imagine Schools filed its pending motion for summary judgment (ECF No. 33), as did the School Board and Ms. Ellis (ECF No. 34).  Plaintiff responded to both motions (ECF

Nos. 50; 59), and Defendants replied (ECF Nos. 71; 74).   The parties have also filed three pending motions to seal.   (ECF Nos. 32; 48; 68).

## II.   Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.* at 248.   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."   *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."   *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

6

(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.   *See Liberty Lobby,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."   *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

**III. Analysis**

   **A.   Section 1983 Claims**

The briefs supporting Defendants' motions cover a wider ground than Plaintiff's complaint.   As Plaintiff's responses to the motions elucidate, Counts I and II of the complaint assert two clear and distinct § 1983 claims.   Count I asserts a substantive due process violation occurred when Plaintiff's children were placed in lower-grade classrooms.   (ECF Nos. 2 ¶¶ 37-38; 59, at 2-3).   Count II asserts a violation of the Equal Protection Clause, alleging that Plaintiff's children were

singled out for more extreme punishment than other students who violated the uniform policy.   (ECF Nos. 2 ¶ 47; 59, at 3). Because Plaintiff has failed to put forth evidence establishing a substantive due process or equal protection violation in general, it is not necessary to address several of Defendants' arguments.[3]

### 1.   Substantive Due Process (Count I)

The complaint asserts a substantive due process violation on behalf of Plaintiff's children in that Defendants deprived the children of their right to a "continuous and uninterrupted" education.   (ECF No. 2 ¶¶ 37, 40).   Plaintiff now concedes that there is no constitutionally-protected right to a continuous and uninterrupted education, *see Stewart v. Morgan State Univ.*, 46 F.Supp.3d 590, 602 n.9 (D.Md. 2014) (citing *San Antonio Ind. Sch. Dist. v. Rodriquez*, 411 U.S. 1 (1973)), but instead contends that the substantive due process claims in Count I "are derived from the liberty interest she has in her children's education and that Imagine Lincoln's acquiescence in the harassment, bullying, and intimidation of her children constituted a violation of their substantive due process . . . rights under the U.S. Constitution."   (ECF No. 59, at 8-9).

---

[3] For example, the parties devote significant attention to the implications of Imagine Lincoln's status as a charter school for the viability of Plaintiff's § 1983 claims.   It is not necessary to decide this question here, and the court declines to do so.

Plaintiff asserts a substantive due process claim *on her own behalf* based on a deprivation of *her* liberty interest in directing her children's education for the first time in her responses to Defendants' motions. Plaintiff may not use her responses to amend her complaint and assert what amounts to a new claim. *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F.App'x 556, 563 (4th Cir. 2008). The complaint did not put Defendants on fair notice that Plaintiff was attempting to assert a substantive due process claim based on the deprivation of her own liberty interest. In addition, although parents have a right "to direct their children's education," *see Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 177 (4th Cir. 1996), Plaintiff has put forth no evidence showing that Defendants' actions prevented her from doing so.

Plaintiff also argues, again for the first time in her responses, that Defendants violated her children's substantive due process rights when they "intentionally bullied and harassed them in violation of Maryland Education Code § 7-424.1." (ECF No. 59, at 14). A § 1983 claim, however, is only "a method for vindicating *federal rights* elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes," and Plaintiff may not base her § 1983 claim on a violation of state law. *Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F.Supp.2d 861, 889 (E.D.Va. 2012) (emphasis

added) (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Moreover, and perhaps most importantly, "[c]onstitutional liability is reserved for those rare situations in which the behavior of school officials is not merely disproportionate, but 'so disproportionate' as to be 'literally shocking to the conscience.'" *Savoy v. Charles Cty. Pub. Schs.*, 798 F.Supp.2d 732, 738 (D.Md. 2011) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)). Even if Plaintiff could articulate a protected interest, Defendants' actions do not satisfy the high threshold of egregiousness necessary to sustain a substantive due process claim. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). No doubt, placing impressionable and vulnerable school-age children in a significantly lower-grade classroom for a week may have exposed Plaintiff's children to unnecessary negative attention from other students. As evidenced by decisions in other courts, however, such actions are not so outrageous as to "shock the conscience." For example, in *Hicks v. Halifax Cty. Bd. of Educ.*, 93 F.Supp.2d 649 (E.D.N.C. 1999), a third-grade student was placed on "long-term suspension" because he failed to comply with the school's uniform policy. In *Hicks*, the court held that although the school's decision to suspend the child "may be a decision disturbingly inconsistent with the most basic goals of the public school system, the court cannot conclude

that such a decision 'shocks the conscience.'" *Id.* at 665.
Similarly, the Eighth Circuit has held that a teacher repeatedly
calling a student "retarded," "stupid," and "dumb" in front of
classmates was "singularly unprofessional" but was not
"sufficiently shocking to the conscience to state a substantive
due process claim." *Costello v. Mitchell Pub. Sch. Dist. 79*,
266 F.3d 916, 921 (8th Cir. 2001); *see also Doe v. Gooden*, 214
F.3d 952 (8th Cir. 2000) (holding that "extensive" verbal abuse
and insults did not give rise to a substantive due process
claim); *Abeyta By and Through Martinez v. Chama Valley Indep.
Sch. Dist., No. 19*, 77 F.3d 1253, 1258 (10th Cir. 1996)
("strongly condemning" a teacher who called a student a
"prostitute" and noting that doing so was "a complete abuse of
his authority," but holding that such actions did not give rise
to a substantive due process claim).  Plaintiff has simply not
shown that Defendants' actions rise to the level of sufficient
severity to support a substantive due process claim.
Accordingly, Defendants' motions for summary judgment will be
granted as to Count I.

   **2.   Equal Protection (Count II)**

   Plaintiff asserts that Defendants' treatment of her
children violated the Equal Protection Clause because "other
students whose school clothes did not conform to the school
uniform policy" were treated less harshly.  (ECF No. 2 ¶ 47).

11

Although unclear in the complaint, Plaintiff asserts an equal protection claim under a "class-of-one" theory, rather than a theory that Defendants discriminated against a certain class of students. (ECF No. 59, at 20).  To succeed on a class-of-one theory, a party must show that "it had been intentionally treated differently from others similarly situated and that there was no rational basis to support the different treatment." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (citations omitted).  With respect to class-of-one claims, the Supreme Court has noted:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases, the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).  Thus, *Engquist* limits a plaintiff's ability to bring an equal protection claim under a class-of-one theory.  *See Dyer v. Md. State Bd. of Educ.*, --F.Supp.3d--, 2016 WL 2939740, at *13

(D.Md. May 20, 2016) (noting that *Engquist* has "curtailed" class-of-one equal protection claims).

Defendants argue that the school officials were exercising their discretion in reprimanding students who violated the uniform policy.  As the undersigned noted in a prior case, "[a] number of district court decisions have applied the reasoning used in *Engquist* to preclude 'class of one' equal protection claims in the public education context."  *Uzoukwu v. Prince George's Cmty. College Bd. of Trustees*, No. DKC-12-3228, 2013 WL 4442289, at *9 (D.Md. Aug. 15, 2013) (citing cases).[4]  This has included cases where the plaintiff asserts a class-of-one equal protection theory based on perceived disparities in punishment for violations of school policies.  *See, e.g.*, *Smith v. Seligman Unified Sch. Dist.*, 664 F.Supp.2d 1070, 1078-79 (D.Ariz. 2009); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F.Supp.2d 461, 494 (E.D.N.Y. 2009).  The reasoning in *Smith* is persuasive:

> The court believes that the type of decisionmaking that Plaintiffs complain are precisely those type of actions not subject to the class of one theory of equal protection.  Like any system of punishment, there will be a wide variety of results, all

---

[4] The Fourth Circuit recently had an opportunity to discuss *Engquist*'s impact on cases arising in the public education setting, but it declined to do so.  *See Kerr v. Marshall Univ. Bd. of Governors*, --F.3d--, 2016 WL 2995806, at *14 (4th Cir. May 24, 2016) ("We therefore need not decide whether a 'class of one' equal protection theory is possible in the public education setting and hold that the district court did not err in dismissing this claim.").

of which depend upon the individual circumstances of each situation. To say that a principal must uniformly apply the same level of punishment to all violators of a particular policy is to rob him or her of the important discretion that is inherent in the position of principal. Moreover, a particular form of punishment may not be as effective for one student as it might for another. To subject a school district to equal protection claims each time a new or different punishment is administered by its principals would have the effect of handicapping school officials in meting out the type of punishment that the individual student is most likely to respond. Such an end is not the gravamen the Equal Protection Clause is intended to eliminate.

Moreover, this Court is guided by the same "common-sense realization" that guided the Supreme Court in *Engquist*; namely, that school districts could hardly function if every disciplinary decision became a constitutional matter. If a student need not claim discrimination on the basis of membership in a protected class, but rather only that he or she was treated worse than other students similarly situated, any disciplinary action taken by a school district can suddenly become the basis for a federal constitutional claim. It is not difficult to imagine an allegation of differential treatment in nearly every disciplinary decision in the public school context.

*Smith*, 664 F.Supp.2d at 1078. Accordingly, because Plaintiff asserts only a class-of-one equal protection claim, Defendants' motion for summary judgment will be granted as to Count II.

## B.  Intentional Infliction of Emotional Distress (Count III)

In Count III, Plaintiff asserts a claim of intentional infliction of emotional distress against Ms. Ellis.  In order to succeed on an intentional infliction of emotional distress claim, a plaintiff must show: (1) that the defendant's conduct was intentional or reckless; (2) that the conduct was extreme and outrageous; (3) that the wrongful conduct is causally connected to the plaintiff's emotional distress; and (4) that the plaintiff suffered severe emotional distress.  *See Hodge*, 121 F.Supp.3d at 503 (citation omitted).  In Maryland, the tort of intentional infliction of emotional distress is "to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct."  *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring) (internal quotation marks omitted) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 515 (1995)); *see Williams v. Wicomico Cty. Bd. of Educ.*, 836 F.Supp.2d 387, 399 (D.Md. 2011) ("To wit, [intentional infliction of emotional distress] claims may succeed only when the defendant's conduct was so outrageous that it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." (citation and internal quotation marks omitted)).

Here, Plaintiff has put forth evidence that Ms. Ellis spoke negatively about Plaintiff and "frequently called Plaintiff derogatory names and informed other Imagine Lincoln staff members that she wanted her children out of the school." (ECF No. 67-1 ¶ 10). Plaintiff asserts that this conduct, in addition to placing the children in lower-grade classrooms, "was tantamount to directly bullying the children for no other reason other than to penalize them for their mother's inability to purchase appropriate uniforms on their behalf." (ECF No. 50, at 24). Again, speaking negatively about Plaintiff and placing her children in lower-grade classrooms may have been unprofessional, counterproductive, and hurtful to Plaintiff and her children. This conduct, however, falls far short of what is required to succeed on an intentional infliction of emotional distress claim. Accordingly, Ms. Ellis's motion for summary judgment will be granted as to Count III.

## IV.  Motions to Seal

Pursuant to the court's protective order, the parties have filed three motions to seal. (ECF Nos. 32; 48; 68). At issue in any request to seal are the principles of common-law access and the more rigorous First Amendment analysis that applies to judicial records. The Fourth Circuit has reminded us that:

> It is well settled that the public and press have a qualified right of access to judicial documents and records filed in

16

civil and criminal proceedings. *See
Richmond Newspapers, Inc. v. Virginia*, 448
U.S. 555, 580 n.17 (1980); *Nixon v. Warner
Communications, Inc.*, 435 U.S. 589, 597
(1978); *Media Gen. Operations, Inc. v.
Buchanan*, 417 F.3d 424, 428 (4th Cir. 2005).
The right of public access springs from the
First Amendment and the common-law tradition
that court proceedings are presumptively
open to public scrutiny. *Va. Dep't of State
Police v. Wash. Post*, 386 F.3d 567, 575 (4th
Cir. 2004). "The distinction between the
rights of access afforded by the common law
and the First Amendment is significant,
because the common law does not afford as
much substantive protection to the interests
of the press and the public as does the
First Amendment." *In re United States for
an Order Pursuant to 18 U.S.C. Section
2703[(D)]*, 707 F.3d 283, 290 (4th Cir. 2013)
(quoting *Va. Dep't of State Police*, 386 F.3d
at 575) (internal quotation marks omitted).
The common-law presumptive right of access
extends to all judicial documents and
records, and the presumption can be rebutted
only by showing that "countervailing
interests heavily outweigh the public
interests in access." *Rushford v. New
Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th
Cir. 1988). By contrast, the First
Amendment secures a right of access "only to
particular judicial records and documents,"
*Stone v. Univ. of Md. Med. Sys. Corp.*, 855
F.2d 178, 180 (4th Cir. 1988), and, when it
applies, access may be restricted only if
closure is "necessitated by a compelling
government interest" and the denial of
access is "narrowly tailored to serve that
interest." *In re Wash. Post Co.*, 807 F.2d
383, 390 (4th Cir. 1986) (quoting *Press-
Enter. Co. v. Superior Court*, 464 U.S. 501,
510 (1984) (internal quotation marks
omitted)).

*Doe v. Pub. Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014).

"[D]ocuments filed with the court are 'judicial records' if they

play a role in the adjudicative process, or adjudicate
substantive rights." *In re U.S. for an Order*, 707 F.3d at 290.
The First Amendment test for access to judicial records extends
to "'dispositive' civil motions, such as a motion for summary
judgment that is successful either in full or part." *Allstate
Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *17
(D.Md. Feb. 29, 2012); *see Rushford*, 846 F.2d at 252-53.

In addition, a motion to seal must comply with Local Rule
105.11, which provides that:

> Any motion seeking the sealing of
> pleadings, motions, exhibits or other papers
> to be filed in the Court record shall
> include (a) proposed reasons supported by
> specific factual representations to justify
> the sealing and (b) an explanation why
> alternatives to sealing would not provide
> sufficient protections. The Court will not
> rule upon the motion until at least 14 days
> after it is entered on the public docket to
> permit the filing of objections by
> interested parties. Materials that are the
> subject of the motion shall remain
> temporarily sealed pending a ruling by the
> Court. If the motion is denied, the party
> making the filing will be given an
> opportunity to withdraw the materials.

This Local Rule endeavors to protect the common-law right
to inspect and copy judicial records and documents, *Nixon v.
Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while
recognizing that competing interests sometimes outweigh the
public's right of access. *In re Knight Publ'g Co.*, 743 F.2d
231, 235 (4th Cir. 1984).

Here, it is clear that the materials the parties request be sealed contain some information designated as "confidential" in the protective order, including the identities of Plaintiff's minor children.  The parties have not, however, explained why redacting such information would not be an effective alternative to the sealing of several documents.  Particularly in light of the First Amendment interests that attach to judicial records, more limited redactions are preferable to widespread sealing. Accordingly, the motions to seal will be denied without prejudice.  The parties will be given thirty (30) days to file jointly a motion with proposed redactions, until which time the materials currently under seal will remain under seal.

## V.    Conclusion

For the foregoing reasons, the motions for summary judgment filed by Defendants will be granted.  The motions to seal will be denied without prejudice.  A separate order will follow.


                                                    /s/
                                           DEBORAH K. CHASANOW
                                           United States District Judge